IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER YOUNG
   Plaintiff *Pro se*      Civil Action No. 17-125 E

(W.D.PA.2017)

-VS-

JOSE BOGGIO, ROBERT MAXA,
JERI SMOCK, ALEXIS SECARA,
DANIEL STROUP, JOSEPH SILVA,
MICHAEL CLARK, ANDREA NORRIS,
CORRECT CARE SOLUTIONS,
JOHN WETZEL,
   Defendant(s)

RECEIVED
MAY 15 2017
CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

JURY TRIAL REQUESTED

## VERIFIED COMPLAINT
## PURSUANT TO 42 U.S.C. §§1983-1985

### STATEMENT OF JURISDICTION

This Court has jurisdiction to hear Plaintiff's civil claims under 42 U.S.C. §§1983-1985 pursuant to 28 U.S.C. §§1331; and 1342 for violation of rights secured under the First, Eighth, and Fourteenth Amendments to the United States Constitution while Defendant(s) were acting under color of state law.

## PARTIES

1. Plaintiff Christopher Young is an adult individual currently incarcerated at the Pennsylvania Department of Corrections housed at State Correctional Institution Albion (S.C.I.) 10745 Route 18 Albion, PA. 16475.

2. Defendant Jose Boggio is the medical Doctor at S.C.I.-Albion and is responsible for providing health care to inmates there, and an employee of Correct Care Solutions. He is sued in his official and individual capacities. At all relevant times, Defendant Boggio has acted and will continue to act under color of State Law.

3. Defendant Robert Maxa is the medical Doctor at S.C.I.-Albion and is responsible for providing health care to inmates there, and an employee of Correct Care Solutions. He is sued in his official and individual capacities. At all relevant times, Defendant Maxa has continue to act under color of State Law.

4. Defendant Jeri Smock is a Correctional Health Care Administrator (C.H.C.A.) at S.C.I.-Albion, and an employee of the Department of Corrections. As C.H.C.A. she is responsible for the oversight of health care at S.C.I.-Albion. Defendant Smock is sued in her official and individual capacities. At all relevant times, she has acted and will continue to act under color of State Law.

5. Defendant Alexis Secara is a Physician Assistant at S.C.I.-Albion and is responsible for providing health care to inmates there, and an employee of Correct Care Solutions. She is sued in her official and individual capacities. At all relevant times, Defendant Secara has acted and will continue to act

under color of State Law.

6. Defendant Daniel Stroup is a Physician Assistant at S.C.I.-Albion and is responsible for providing health care to inmates there, and an employee of Correct Crae Solutions. He is sued in his official and individual capacities. At all relevant times, Defendant Stroup has acted and will continue to act under color of State Law.

7. Defendant Michael Clark is the Superintendent at S.C.I.-Albion. He is responsible for the custody, control, and care of inmates. He is sued in his official and individual capacities. At all relevant times, Defendant Clark has acted and will continue to act under color of State Law.

8. Defendant John Wetzel is the Secretary of the Department of Corrections. He is responsible for all the oversight, operation, and administration of the Commonwealth's Correctional System, including providing appropriate medical treatment and the formulation of policies that ensure the provision of that treatment to Plaintiff. He is sued in his official and individual capacities. At all relevant times, Defendant Wetzel has acted and will continue to act under color of State Law.

9. Defendant Joseph Silva is the Director of the Bureau of Health Care Service of the Department of Corrections. The Bureau of Health Care Services is responsible for supervising and monitoring the delivery of all medical and dental care services throughout State Correctional System. Which must be provided at a level consistent with community standards.

Defendant Silva is sued in his individual and official

capacities. At all relevant times, he has acted and will continue to act under color of State Law.

10. Defendant Andrea Norris on information and belief. Defendant Norris is employed by Bureau of Health Care Service of the Pennsylvania Department of Corrections and has responsibility in overseeing delivery of medical services in the Pennsylvania Department of Corrections. Defendant Norris is sued in her individual and official capacities. She has acted and will continue to act under color of State Law.

11. Defendant Correct Care Solutions is the current health care provider for all Pennsylvania Department of Corrections Facilities within Pennsylvania. The principal office for Correct Care Solutions is in Nashville, Tennessess, and, on information and belief, maintains an Office in Pennsylvania. Correct Care Solutions began providing health care services to the Pennsylvania Department of Corrections on September 1, 2014. At all relevant time, Correct Care Solutions has acted and will act under the color of State Law.

12. Defendant Pennsylvania Department of Corrections (D.O.C.) is an agency of the Commonwealth of Pennsylvania that operates S.C.I.-Albion. The principal office for the Pennsylvania Department of Corrections is located in Mechanicsburg, Pennsylvania. The (.D.O.C.) is responsible for providing adequate medical health services to and create policies the ensure appropriate medical treatment to Plaintiff.

## FACTS

13. On June 22, 2016, Plaintiff went to the outside Hospital i.e. Saint Vincent Hospital and under went a colonoscopy

procedure. At the same tme, Dr. Patrick Recio at Saint Vincent Hospital performed this procedure he diagnosed Plaintiff with erosive reflux esophagitis LA Class A and prescribed Plaintiff with dyspepsia medication.

14. On June 30, 2016, Plaintiff went to the outside Hospital i.e. Mill Creek Community Hospital and under went a endoscopy procedure. At the same time, Dr. Vincent Fierro at Mill Creek performed this procedure he diagnosed Plaintiff with erosive reflux evidence LA Class A. Finally, Dr. Fierro recommended that Plaintiff get treated with carafate medication.

15. Defendant Maxa deprived Plaintiff of medication that was recommeded by outside Dr. Fierro. Furthermore, Plaintiff serious medical needs deprived due to Defendant Maxa deliberate indifference.

16. On December 30, 2016, Plaintiff was enlighten by Defendant Secara of the medical report that outside Dr. Fierro recommended. Finally, Plaintiff filed numerous institutional complaints against Defendant(s) Boggio, Secara, Stroup, Smock, Clark and Correct Care Solutions depriving Plaintiff of serious medical needs. For example, (1) stomach and chest pain (2) drilling and gnawing sensation (3) cardiac area esophagus area (4) burning (5) soarness (6) sensitivity (7) pressure (8) tightening among other symptoms Defendant(s) deprived Plaintiff of medication that was recommended by outside Dr. Fierro.

17. Plaintiff send a institutional request to Defendant Boggio demanding the reason he deprived Plaintiff of medication that was recommended by a Surgeon. Finally, Defendant Boggio never responded back to Plaintiff.

18. On January 4, 2017, Plaintiff filed a institutional complaint against Defendant Boggio for telling Plaintiff that he's not giving Plaintiff carafate medication because it cost to much money. Finally, this institutional complaint was denied by Defendant Smock.

19. On January 5, 2017, Plaintiff send institutional request to Defendant Clark whereas Defendant Clark pass the buck to Defendant Smock to reply. However, Defendant Smock along with Defendant(s) retaliated and removed Plaintiff off medication entirely leaving Plaintiff to suffer serious medical needs.

20. Defendant Smock replied back to the institutional request that Plaintiff send to Defendant Clark. Defendant Smock stating that Plaintiff received a colonoscop and a biopsy from which was news to Plaintiff. In addition, Defendant Smock said I was order carafate at the time. However, Defendant Boggio siad it's no need because the Department of Corrections on a constraint budget.

21. On January 6, 2017, Plaintiff send a institutional request to Defendant Secara seeking clarification of Dr. Fierro treatment plan from which Defendant Boggio totally ignored Plaintiff medical concerns and manipulated Plaintiff medical records.

22. On January 9, 2017, Plaintiff send a institutional request to Defendant Clark pertaining to Plaintiff medical concerns and the ongoing medical concerns at S.C.I.-Albion Medical Department from which Defendant Clark pass the buck to Defendant(s).

23. Plaintiff send a institutional request to Defendant Secara

pertaining to Plaintiff serious medical needs and carbon copy it to Defendant Clark and Defendant Wetzel.  However, Plaintiff medical condition worsen and Defendant Secara manipulated Plaintiff medical records pretended to give Plaintiff treatment not working.

24. Plaintiff replied back to Defendant Clark on a institutional request stating that it's a lack of transparency between Defendant(s).  Nonetheless, Defendant Clark response back stating innuendoes that Plaintiff is a cry baby and pass the back to Defendant(s).

25. On January 23, 2017, Plaintiff hand delivered Defendant Secara a institutional request.  Plaintiff stating that the medication carafate is not working.  Finally, Defendant Secara personally told me that I am going through a clinical trial and they job is to observe Plaintiff symptoms.

26. Defendant Secara replied back to Plaintiff institutional request pertaining to medication.

27. On January 25, 2017, Plaintiff send a institutional request to Defendant Smock explaining that Defendant Boggio terminated Plaintiff medication leaving Plaintiff in serious medical needs.

28. On January 30, 2017, Plaintiff send a institutional sick call request to S.C.I.-Albion Medical Department.  Nonetheless, Plaintiff suffer sleep deprivation from what side effects of the medication or clinical trial Plaintiff going through by S.C.I.-Albion Medical Department.

29. On January 31, 2017, Plaintiff send a institutional request to Defendant Smock trying to set a meeting with Defendant Smock.

30. On February 1, 2017, Plaintiff send a institutional sick call request pertaining to chronic medical concerns.

31. On February 1, 2017, Plaintiff send Defendant Smock a institutional request pertaining to erosive reflux esophagitis. Nonetheless, Plaintiff explain to Defendant Smock that Plaintiff did not smoke. At the same time, Defendant Smock attempt to educate Plaintiff pertaining to smoking from which don't have nothing to do with Plaintiff serious medical needs at hand.

32. On February 7, 2017, Plaintiff filed a institutional sick call request pertaining to serious medical needs. Nonetheless, Plaintiff started taken protonix medication on January 10, 2017 as well as carafate medication on January 20, 2017. Finally, Plaintiff can't sleep and seek medical help from Defendant Boggio from which he totally disregard and terminated my institutional sick call request on February 15, 2017.

33. Defendant Smock told Plaintiff she will be present with Plaintiff with health care provider.

34. On March 2, 2017, Plaintiff received a response dated February 16, 2017 from Defendant Silva stating therein that Plaintiff cardiac treatment was reviewed by Central Office (i.e. Bureau of Health Care Services) and the Final Review Team Committee agreed with S.C.I.-Albion Medical Department. Finally, Plaintiff being denied adequate medical care and the response from Central Office was more than cookie-cutter manipulation.

35. Defendant Silva told Plaintiff that If he have any medical concerns it should be address to Defendant Boggio Medical Director and Defendant Smock Correctional Health Care

Administrator at S.C.I.-Albion Medical Department. Finally, Defendant(s) passing the buck.

36. On February 26, 2017, Plaintiff send a institutional request to Defendant Smock therein Plaintiff complaint that Defendant Boggio re-scheduled sick call appointment due to Defendant Smock was at a conference. However, Defendant Boggio stated he re-scheduled Plaintiff for February 27, 2017 from which Plaintiff was not on the institutional roster i.e. call out. In addition, Plaintiff send a institutional sick call request January 30, 2017. Finally, Plaintiff never was on the institutional roster period.

37. On February 28, 2017, Plaintiff personally appeared in front of Defendant Boggio and Defendant Smock. Nonetheless, Plaintiff gave both Defendant(s) a list of medical concerns from which Defendant(s) disregarded.

38. Plaintiff experience side effects after taken carafate and protonix and explain it to Defendant(s) from which they disregarded.

39. Plaintiff have serious medical needs. However, Defendant Secara stated that these medical concerns are related to reflux. Finally, Plaintiff asked Defendant Boggio and Defendant Smock what's really wrong with Plaintiff. Lastly, on June 30, 2017, Plaintiff learned that polyps was removed.

40. On March 5, 2017, Plaintiff send Defendant Smock a institutional request pertaining to the cost of Plaintiff medical procedures because Defendant Smock on February 28, 2017, when Plaintiff personally appeared in front of Defendant Boggio and Defendant Smock at a sick call appointment they was more

-9-

concern about cost oppose to Plaintiff serious health needs.

41. Defendant(s) Boggio and Smock both agreed that if Plaintiff gall bladder and pancreas test positive. Nonetheless, both Defendant(s) stated it's nothing they can do. At the same time, Defendant Smock respond back on March 5, 2017, to a institutional request therein stating no money will be deducted off your inmate account.

42. On February 28, 2017, Plaintiff appeared personally in front of Defendant(s) Boggio and Smock at sick call appointment. Both Defendant(s) told Plaintiff that they don't care about institutional complaints because they have sovereign immunity and they going to retaliate by not treating Plaintiff and manipulate Plaintiff medical records on top of hoping President Trump take the affordable health care act a.k.a. Obamacare.

43. Defendant Boggio showed Defendant Smock Plaintiff diagnose on computer (e.g. LA CLASS A EROSIVE ESOPHAGITIS GASTRITIS). Finally, Defendant Boggio pointed out that class A is positive oppose to class D is negative.

44. Plaintiff send Defendant Stroup numerous institutional request(s) and appeared personally in front of Defendant whereas Plaintiff complaint of serious medical needs and Defendant Stroup placed Plaintiff on numerous medication that don't work.

45. Plaintiff would complaint to Defendant Stroup pertaining to the medication he take. However, Defendant Stroup aware of the recommendation of a outside specialist but disregard Plaintiff medical concern and blame it on the Pennsylvania Department of Corrections budget constraints.

46. From March 2, 2016 to September 12, 2016 betweentimes Plaintiff filed countless institutional complaints against Defendant Stroup in relation to adequate health care. In sum, on December 17, 2015, Plaintiff arrived at S.C.I.-Albion. On August 26, 2016, Defendant Stroup said Plaintiff have Les and refuse to treat Plaintiff.

47. Plaintiff wrote Defendant Wetzel numerous of times making him aware of the medical concerns Plaintiff experiencing at S.C.I.-Albion Medical Department and passing the buck.

48. Furthermore, Plaintiff send Defendant Wetzel letter(s) (e.g. 5/3/16;9/15/16;11/10/16;12/8/16;12/19/16;1/4/17; and 1/12/17) requesting Defendant Wetzel to intervene and stop S.C.I.-Albion playing games and retaliation against Plaintiff.

49. Plaintiff send Defendant Norris (i.e. institutional request, sick call, letter, and carbon copies) of institutional complaints at S.C.I.-Albion Medical Department.

50. On March 10, 2017; March 12, 2017; and March 20, 2017, Plaintiff filed institutional sick call request along with institutional request complainting therein medical concerns such as (1) pains (2) burning (3) gnawing (4) drilling among other things. In a nutshell, Plaintiff request a follow up due to the trials of medication i.e. carafate/protonix. Finally, Plaintiff request results from March 8, 2017.

51. On March 23, 2017, Plaintiff personally appeared in front of Defendant Smock at sick call. Furthermore, Defendant said they did everything that Pennsylvania Department of Corrections told them to do under budget constraints.

52. Defendant Secara asked Plaintiff does his family members have a history of aneurysm and if so read books on that subject matter.

## CAUSE OF ACTION

53. Defendant Maxa violated Plaintiff eighth Amendment Rights to the United States Constitution by inflicting cruel and unusual punishment upon Plaintiff serious medical needs. For example, outside Specialist Dr. Patrick Recio and Dr. Vincent Fierro recommended Plaintiff to a treatment procedure. Nonetheless, Defendant(s) refuse to treat Plaintiff serious medical needs due to policy by the Pennsylvania Department of Corrections budget constraints. At the same time, Plaintiff suffer pain after pain from side effect from ineffective medication and so on.

54. On June 30, 2016 to December 30, 2016 betweentimes. Plaintiff experience serious medical needs. Now, on December 30, 2016, Plaintiff was informed by Defendant Secara that outside Specialist recommended a treatment plan for Plaintiff but Pennsylvania Department of Corrections policy would not permit Plaintiff for treatment plan due to budget constraints according to Defendant(s).

55. Plaintiff constantly complaint to Defendant(s) Boggio, Stroup, Secara, Smock, Clark and Correct Care Solutions to prove adequate treatment. Instead, Plaintiff was placed on a trial through various medications like research and development going through all kinds of suffer bt Defendant(s).

56. Defendant Boggio refuse to answer any of Plaintiff institutional request(s) on top of using manipulative retaliatory tactics against Plaintiff serious medical needs.

57. Outside Specialist recommended a treatment plan for Plaintiff June 22, 2016 and June 30, 2016. Nonetheless, on January 4, 2017. Defendant Boggio said..."I am not giving you carafate because it cost to much" and Pennsylvania Department of Corrections on budget constraints. Finally, Defendant Boggio said he work for Correct Care Solutions not employed by the Pennsylvania Department of Corrections and I don't care if you put litigation against me.

58. Plaintiff is under the jurisdiction of the Pennsylvania Department of Corrections (i.e. custody, care, control) of Defendant Clark that superintend S.C.I.-Albion including Medical Department. Nonetheless, Defendant Clark was well-advised of Plaintiff medical concern but fail to intervene with S.C.I.-Albion Medical Department but instead pass the buck and Plaintiff suffer from a serious medical need.

59. Defendant(s) Smock and Boggio violated Plaintiff eighth and fourteenth amendment(s) to the United States Constitution by way of depriving Plaintiff adequate medical treatment and intentionally making Plaintiff suffer a serious medical needs.

60. Defendant Secara violated Plaintiff eighth amendment to United States Constitution by way of depriving Plaintiff of serious medical needs.

61. Plaintiff start receiving carafate/protonix medication ONLY when he start filing institutional complaint(s) against Defendant(s). Nonetheless, Defendant(s) Secara and Smock deprived Plaintiff of serious medical needs playing games by passing the buck while Plaintiff suffer in pain.

62. Under the Defendant Boggio leadership as Medical Director at

S.C.I.-Albion Medical Department. Defendant Boggio deprived Plaintiff of serious medical needs passing the buck on Central Office due to budget constraints.

63. Defendant Boggio intentionally made Plaintiff suffer. For example, (1) Plaintiff went to a outside surgeon. However, the outside surgeon recommended Plaintiff for a treatment plan (2) Plaintiff returned back to S.C.I.-Albion Medical Department from which they disregarded the outside surgeon treatment plan. Nonetheless, Plaintiff had repeatedly submitted institutional complaints pertaining to serious medical needs and Defendant Boggio used manipulative cookie-cutter language to deprive Plaintiff of treatment playing games.

64. On February 28, 2017, Plaintiff personally appeared in front of sick call appointment with Defendant(s) Boggio and Smock. However, Defendan(s) told Plaintiff to stop filing institutional complaint(s) against them because we not going to pay for surgery period and if we violate your rights. "get over it" so what if we deliberate indifference and so forth.

65. Defendant Smock told Defendant Boggio to stop voicing his personal views about President Trump in front of Plaintiff.

Nonetheless, Defendant Smock violated Plaintiff eighth amendment rights by way of serious medical needs and Defendant Smock should be held accountable because she never wrote a incident report against Defendant Boggio for expressing his racist and prejudice views about African-American prisoners pertaining to President Trump.

66. Defendant(s) Smock and Boggio coconspirator to treat Plaintiff like a human guinea pig. For example, placing

-14-

plaintiff in harm's way through various medications that causing all kinds of painful side effects and refuse to properly treat Plaintiff serious medical needs disregarding the recommendations of a outside surgeon.

67. Defendant Smock was well-advised that Plaintiff reflux medication did not work including Specialists recommendations (i.e. carafate/protonix medication) from which was administer on January 10, 2017 and January 20, 2017.  In regardless of Defendant Smock repeatedly denied and delayed Plaintiff adequate medical treatment and violate Plaintiff constitution rights.

68. Defendant(s) Smock and Boggio disregarded Plaintiff seroius medical needs and more concern about cost when I personally appeared at sick call request on February 28, 2017.

69. Defendant Clark was well-advised pertaining to Plaintiff serious medical needs by way of institutional request(s) and institutional complaint(s) but refuse to intervene.

70. Furthermore, Defendant Clark violated Pliantiff eighth and fourteenth amendment(s) for refusing to properly superintend his subordinates.

71. Defendant Stroup violated Plaintiff constitution rights by disregarded Pliantiff serious medical needs and Plaintiff suffer pain not to mention possibility of cancer.

72. Defendant Wetzel was well-advised of Plaintiff medical concerns through letters and refuse to intervene.

73. Plaintiff medical condition became worsen due to Defendant(s) playing manipulative games through vague and sophisticated operation manuals that the Pennsylvania Department of Corrections call policies.

74. Defendant Silva is the Director of Bureau of Health Care Service and teach Defendants how to get around policies pertaining to medical cost.

75. Plaintiff has exhausted all available administrative remedies to no avail.

## PRAYER FOR RELIEF

76. Plaintiff respectfully request the following:

A). A declaration that the acts and omissions by Defendant(s) violated the Constitution and laws of the United States;

B). Punitive damages of $50,000 against each separate Defendant(s) for their personal actions;

C). Cost and expenses, including Attorney fee's;

D) Such other relief the Court deems just and equitable;

E). A jury trial on all triable issues;

## VERIFICATION OF THE COMPLAINT

Plaintiff, hereby declares under penalty of perjury, pursuant to 28 U.S.C.§1746, that the following is true.

DATE: 05/09/2017
MAy 9th, 2017

Respectfully submitted,
/s/ Christopher Young
Christopher Young, #
S.C.I.-Albion
10745 Route 18
Albion, PA 16475