# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-125 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE BOGGIO, et al., | ) | Magistrate Judge Richard A. Lanzillo |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Christopher Young ("Plaintiff"), an inmate at the State Correctional Institution at Albion ("SCI-Albion"), initiated this civil rights action pursuant to 42 U.S.C. § 1983 alleging a violation of his Eighth Amendment rights based on the deprivation of necessary medical care. As Defendants, Plaintiff names prison physicians Jose Boggio ("Dr. Boggio") and Robert Maxa ("Dr. Maxa"); Superintendent Michael Clark ("Clark"); Correctional Health Care Administrator Jeri Smock ("Smock"); Physician Assistants Alexis Secara ("Secara") and Daniel Stroup ("Stroup"); Bureau of Healthcare Services Directors Andrea Norris ("Norris") and Joseph Silva ("Silva"); Secretary of the Department of Corrections John Wetzel ("Wetzel"); and Correct Care Solutions ("CCS"), the entity under contract to provide health care services at SCI-Albion.[1]

The DOC Defendants filed a Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 26, 2017. ECF No. 34. The Medical

---

[1] For ease of reference, Smock, Silva, Norris, Clark and Wetzel will be collectively referred to as the "DOC Defendants." Stroup, Secara, Dr. Maxa, Dr. Boggio and Correct Care Solutions will be referred to as the "Medical Defendants."

1

Defendants filed a similar motion on September 28, 2017. ECF No. 36. Plaintiff, in response, filed a Motion for Summary Judgment on November 24, 2017. ECF No. 46. Each of these motions is ripe for review.[2]

I.  **Factual Background**

According to Plaintiff, on June 22, 2016, a physician at St. Vincent Hospital in Erie, PA, diagnosed him with erosive reflux esophagitis class A, cecum inflammation, and dyspepsia. ECF No. 32 ¶ 13. On June 30, 2016, another physician, Dr. Vincent Fiero, performed an endoscopy and diagnosed Plaintiff with "Erosive Reflux Evidence La class A/Dyspepsia, mildly active chronic gastritis, Chronic inflammation of the lamina propria, focal acute inflammatory infiltrates involving the granular epithelial cells & lamina prapria identified patchy chronic inflammatory infiltrates, neutrophils & lymphocytes." Id. ¶ 14. Dr. Fiero recommended treatment with a drug called "Carafate" and another medication. Id.

Dr. Maxa, the Medical Director at SCI-Albion at that time, did not immediately adopt Dr. Fiero's recommendation that Plaintiff receive Carafate. Id. Instead, Dr. Maxa offered "ineffective medication treatments" for Plaintiff's symptoms. Id. Between June 30, 2016, and December 30, 2016, Plaintiff complained repeatedly to medical personnel about symptoms including "stomach & chest pains, drilling and gnawing sensations in cardiac area esophagus area, burning, soarness [sic], sensitivity, pressure, tightening, tenderness, vibrations in chest area, vibrations spread out front left leg through cardiac area, bubbling, grumbling in stomach and as far up as cardiac area, tightness in my back, flanks, sides, chest and stomach bothering my

---

[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636. See ECF Nos. 9, 33.

2

breathing, clicking in my head, dripping wet (cold) sensations in cardiac area and left under arm, vomiting, sensations of something eating away in my chest [and] other complaints." Id. ¶ 15.

In January 2017, Plaintiff learned, for the first time, of Dr. Fiero's recommendation that he take Carafate. Id. ¶ 16. When Plaintiff inquired about the drug, Dr. Boggio, Dr. Maxa's replacement as the prison's Medical Director, stated that he could not give Carafate to Plaintiff because it "costs money." Id. ¶ 17. Plaintiff responded by submitting a request-slip to Health Care Administrator Smock and Superintendent Clark. Id. ¶ 18. Smock provided the following response:

> [T]he endoscopy showed some esophageal irritation and you were diagnosed with acid reflux. You were ordered Carafate at that time by the specialist, but Doctor Boggio did not feel it was necessary for you to take because the tests were negative for any ulcers or ulcerations of the stomach. After discussing with Dr. Boggio and reviewing your recent request and the symptoms you are having, he has agreed to start you on a trial prescription of Carafate for 2-months and then reevaluate symptoms after medical course has been completed.

Id. ¶ 19. Plaintiff began taking Carafate and another drug, Protonix, in January 2017. Id. ¶¶ 22-24, 31. Smock and PA Secara instructed Plaintiff to schedule an appointment after taking Carafate for a few weeks to determine whether it had alleviated his symptoms. Id. ¶¶ 24, 26.

On February 7, 2017, Plaintiff submitted a sick call slip wherein he complained that the medications he had been provided were ineffective. Id. ¶ 31. Plaintiff attended a sick call with Dr. Boggio and Smock on February 28, 2017. Id. ¶ 39. Dr. Boggio and Smock noted that Plaintiff had already had a colonoscopy and an endoscopy and weighed the costs of other procedures such as an ultra sound before deciding that the cost outweighed the benefit. Id. They both offered the sarcastic observation that "we're no [sic] going to be spending a million dollars" on one inmate. Id. Dr. Boggio also complained that Plaintiff was "twisting his arm" with too much paperwork and informed Plaintiff that he was "going to have a hard life ahead because

3

Trump don't care about plaintiff, you'll see." Id. ¶ 41. Nevertheless, Dr. Boggio and Smock apparently agreed to perform a gall bladder and pancreas test at no charge to Plaintiff. Id. In the meantime, Silva informed Plaintiff that his treatment had been reviewed by staff at the Bureau of Health Care Services and that the care being provided by the staff at SCI-Albion comported with medically appropriate community standards. Id. ¶ 33.

Later, Dr. Boggio discussed the results of some tests with Plaintiff and diagnosed him with class A erosive esophagitis and gastritis. Id. ¶ 42. Dr. Boggio pulled up some charts on the computer and "point[ed] to class-A and said this is good, then pointed to class-D and said, now this is bad, really bad, plaintiff is not [there] yet so plaintiff is ok." Id. ¶ 42. Plaintiff complained that his condition might have worsened beyond class-A since his diagnosis in June 2016. Id. Thereafter, Plaintiff attended numerous sick-call appointments with PA Stroup at which he continued to complain about his symptoms and the ineffectiveness of his medications. Id. ¶ 43. Stroup provided Plaintiff with a list of acid reflux medications and suggested that Plaintiff could pick any drugs from the list that he would like to try. Id. Stroup continued to try different medications in response to Plaintiff's complaints. Id. ¶ 44.

Plaintiff filed grievances on March 12, 2016, and September 12, 2016, alleging that Stroup had denied Plaintiff adequate medical care and was not being transparent. Id. ¶ 45. Secretary Wetzel was aware of Plaintiff's complaints but declined to intervene. Id. ¶¶ 46-47. Plaintiff's grievances were handled by Bureau of Health Care Director Norris. Id. ¶ 48.

Plaintiff had an ultrasound on March 8, 2017. Id. ¶ 49. He also had a CAT scan. Id. ¶ 50. PA Secara explained the results of those procedures to Plaintiff on March 23, 2017, stating that "all results were great" and that nothing was wrong. Id. ¶ 50. Plaintiff complained that his symptoms persisted, but Secara informed him that the DOC had authorized all of the testing that

4

it would authorize at that time and that Plaintiff would have to wait until June 2017 to have another endoscopy performed. Id. Secara asked whether Plaintiff had a family history of aneurisms and suggested that he should work out and read books to decrease his anxiety. Id. ¶ 51.

## II. Standards of Review

### 1. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C. Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same).

### 2. Motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in Conley v. Gibson, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. Twombly, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See also McTernan v. City of York, Pennsylvania, 577 F.3d

521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounded on the Twombly/Iqbal line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### III. Analysis

#### A. Deliberate Indifference to Medical Needs (Medical Defendants)

In his Complaint, Plaintiff contends that each of the Medical Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide

7

care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Plaintiff's claims in the instant action focus on the Medical Defendants' inability to find a medication that effectively relieves his acid reflux symptoms. It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." Tillery v. Noel, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." Tillery, 2018 WL 3521212, at *5 (citing Gause v. Diguglielmo, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

By the same token, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." Tillery, 2018 WL 3521212, at *5 (quoting Estelle, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

8

Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." Hensley v. Collins, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). See also Wisniewski v. Frommer, -- Fed. Appx. --, 2018 WL 4776165, at *3 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017)).

In the instant case, there is no question that Plaintiff received "some level of medical care" from the Medical Defendants. Hensley, 2018 WL 4233021, at *3. During the one-year period described in the Amended Complaint, Plaintiff underwent a colonoscopy, endoscopy, ultrasound, and a CAT scan in an attempt to diagnose the source of his symptoms. The results of those tests revealed that Plaintiff had a mild form of erosive reflux and related disorders. Defendants treated his symptoms with a host of medications, including Plaintiff's preferred drug, Carafate. At one point, Defendants even gave Plaintiff the option to select his own medications from a list of drugs. "Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." Norris v. Frame, 585 F.2d 1183, 1186 (3d Cir. 1978).

To the extent that Plaintiff complains that Dr. Maxa displayed deliberate indifference to Plaintiff's serious medical needs by declining to immediately prescribe him with Carafate, it is well-settled that an inmate's objection to the type of medication provided by prison physicians is precisely the type of "disagreement between an inmate and doctors over alternate treatment plans" that falls well short of a constitutional violation. Tillery, 2018 WL 3521212, at *5. Indeed, these types of claims frequently arise – and are routinely rejected – in the prison setting.

See, e.g., Whooten v. Bussanich, 248 Fed. Appx. 324, 326-27 (3d Cir. 2007) (medical staff was not deliberately indifferent for treating migraine headaches with a medication other than the drug preferred by plaintiff); Ascenzi v. Diaz, 247 Fed. Appx. 390, 391 (3d Cir. 2007) (no deliberate indifference where plaintiff was provided pain medication and antibiotics instead of narcotic pain relievers for his herniated cervical discs); Castro v. Kastora, 2018 WL 4538454, at *6 (E.D. Pa. Sept. 20, 2018) (use of ibuprofen and Tylenol instead of Oxycodone or other narcotics did not amount to deliberate indifference; "[t]he medical staff did not withhold pain medication [but] merely exercised their medical judgment in providing [plaintiff] with a different medication than what he wanted."). This principle also extends to a prison physician's disagreement with an outside physician over treatment options. See, e.g., White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness."); Snipes v. DeTella, 95 F.3d 586, 590 (7th Cir. 1996) ("Physicians will disagree about whether a particular course of treatment is appropriate, or even if treatment if appropriate at all, but a disagreement in treatment alone will not support a constitutional violation.").

Plaintiff also alleges, albeit in a conclusory fashion, that Dr. Boggio may have been motivated by budgetary and cost-containment factors in reaching his decision to delay treatment with Carafate. Courts have found plausible claims of medical indifference where prison physicians refuse to provide adequate care for non-medical reasons, such as cost-containment. See, e.g., Robinson v. Corizon Health, Inc., 2016 WL 7235314, at *7 (E.D. Pa. Dec. 13, 2016). However, such claims arise only when a prisoner alleges that "the provision of medical care was

*both* inadequate *and* motivated by improper or non-medical reasons." Buehl, 2017 WL 914275, at *7 (emphasis added). See also Pearson, 850 F.3d at 535-536 (noting that a deliberate indifference claim has "two very distinct subcomponents": the physician must have provided "inadequate medical care," and he must have done so "with the requisite state of mind"). The second component – the "intent of the medical provider" – becomes critical only where "the care received by an inmate was clearly inadequate." Robinson, 2016 WL 7235314, at *7.

As discussed above, the care provided by Dr. Boggio was not clearly inadequate. Dr. Boggio provided Plaintiff with a host of medications, including Carafate, in an attempt to alleviate his symptoms. The Amended Complaint states that Dr. Boggio delayed treatment with Carafate because he felt that it was medically unnecessary in light of the fact that Plaintiff did not have ulcers or ulcerations of the stomach, rather than for budgetary reasons. ECF No. 32 ¶ 19. Plaintiff received extensive testing, including referrals to outside consultants, in an attempt to diagnose the source of his symptoms. In the face of these undisputed factual averments from Plaintiff's own pleading, Plaintiff's conclusory allegation that budgetary factors entered into the Medical Defendants' decision-making is insufficient to render their exercise of medical judgment deliberately indifferent. See, e.g., Winslow v. Prison Health Services, 406 Fed. Appx. 671, 674-75 (3d Cir. 2011) ("[T]he naked assertion that Defendants considered cost in treating [plaintiff's] hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment.").

Finally, Plaintiff's claims against CCS – to the extent that they are articulated at all – must be dismissed. In order to hold a private corporation such as CCS liable for a constitutional violation under § 1983, Plaintiff must show that the corporation, with deliberate indifference to

11

the consequences, established or maintained a policy, practice, or custom which directly caused the constitutional harm. See generally Monell v. Dept. of Social Services of N.Y., 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (applying Monell to a private company providing medical services to inmates). Plaintiff has failed to allege any such policy or custom or, for that matter, to present any factual averments of any sort with respect to CCS. Without facts establishing that the company's alleged deliberate indifference stemmed from a specific policy, Plaintiff cannot state a claim against CCS. See, e.g., Kloss v. Correct Care Solutions, 2018 WL 6268270, at *5 (W.D. Pa. Oct. 31, 2018) (dismissing claim against CCS based on failure to allege a policy or practice evincing deliberate indifference).

### B. Deliberate Indifference to Medical Needs (DOC Defendants)

Plaintiff next contends that various non-medical DOC officials violated the Eighth Amendment by failing to intervene in Plaintiff's medical treatment despite their awareness of his serious medical needs. This claim is quickly dismissed. As an initial matter, the Third Circuit has held that prison officials who are not physicians cannot be considered deliberately indifferent simply because they fail to respond directly to the medical complaints of a prisoner who is already in the care of the prison's physician. Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). This is because, "[a]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment *scienter* requirement or deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Because there is no dispute that Plaintiff received frequent treatment from the prison's medical staff, he cannot sustain a claim against

non-medical personnel for deliberate indifference. See, e.g., In re Wetzel, 2016 WL 4945315, at *3 (W.D. Pa. Sep. 16, 2016) (rejecting a claim of deliberate indifference against a non-medical defendant because the plaintiff acknowledged that he had received treatment from prison physicians).

In addition, it is axiomatic that liability can only be imposed upon supervisory officials if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Plaintiff's allegations against Clark, Wetzel, Norris and Silva are each based on their role in the grievance review process. ECF No. 32 ¶¶ 58, 69-70, 72-74. It is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." Mearin v. Swartz, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013). See also Mincy v. Chmielsewski, 508 F. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). As such, courts have routinely dismissed civil rights allegations against prison officials whose only knowledge of the alleged violation stemmed from their participation in the grievance process. See, e.g., Beale v. Wetzel, 2015 WL 2449622, at *5 (W.D. Pa. May 21, 2015) (dismissing claims against senior prison officials because the only allegations against them arose in the context of their participation in an administrative appeal process); Mearin, 951 F.Supp.2d at 782 (same); Rogers v. United States, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official."). The Court reaches the same conclusion here.

**C. Plaintiff's Motion for Summary Judgment**

In response to Defendants' motions to dismiss, Plaintiff filed a motion for summary judgment. ECF No. 46. Because Plaintiff's Amended Complaint is subject to dismissal for failure to state a claim, summary judgment is clearly unwarranted and Plaintiff's motion will be denied as moot. Even if this were not the case, Plaintiff has failed to comply with Local Rule 56.1 which requires a party seeking summary judgment to submit a statement of uncontested facts containing numerically numbered paragraphs and citations to the record. Finally, a district court is "rarely justified in granting summary judgment" prior to the close of discovery. Doe v. Abington Friends Sch., 480 F.3d 252, 25 (3d Cir. 2007). Thus, even if Plaintiff's Amended Complaint had survived Defendants' Rule 12(b)(6) challenge, Plaintiff's summary judgment motion would be premature. For each of these reasons, Plaintiff's motion for summary judgment is denied.

## V. CONCLUSION

For all of the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 34, 36) are each GRANTED and Plaintiff's Amended Complaint is dismissed. Plaintiff's Motion for Summary Judgment (ECF No. 46) is DENIED.

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
United States Magistrate Judge

Dated: December 30, 2018